UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CRYSTAL LINKSWILER,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>  Defendant. | CASE NO. 3:16-CV-05158-DWC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of Plaintiff's application for Supplemental Security Income ("SSI") Benefits. The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 7.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred by failing to properly evaluate the medical opinion of one examining psychologist. Therefore, this matter is reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings.

## **PROCEDURAL & FACTUAL HISTORY**

On June 14, 2010, Plaintiff filed an application for SSI. *See* Dkt. 9, Administrative Record ("AR") 191-94. Plaintiff alleges she became disabled on March 1, 2007, due to attention deficit hyperactivity disorder ("ADHD"), depression, migraines, back pain, high blood pressure, strokes, and other heart problems. *See* AR 191, 219. Plaintiff's application was denied upon initial administrative review and on reconsideration. *See* AR 75-78. A hearing was held before ALJ Scott Morris on July 10, 2012, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 37, 39. On July 24, 2012, the ALJ found Plaintiff was disabled within the meaning of Section 1614(a)(3)(A) of the Social Security Act beginning on February 25, 2012. AR 30. However, the ALJ found Plaintiff was not disabled prior to that date. AR 30. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 25, 2013, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481.

On December 4, 2013, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. AR 1239-41. On August 4, 2014, the Hon. Robert J. Bryan adopted the report and recommendation of the Hon. J. Richard Creatura, finding the ALJ erred by offering insufficient reasons to reject the medical opinion of examining psychologist Mary D. Looman, Ph.D. AR 1245-52. On remand to the Commissioner, ALJ Cynthia Rosa found Plaintiff was not disabled prior to February 25, 2012. AR 1155, 1169.[1] Plaintiff argues ALJ Rosa's decision should be reversed and remanded with instructions to find Plaintiff disabled as of

---

[1] ALJ Morris' finding Plaintiff was disabled as of February 25, 2012 was not challenged on appeal, nor was this finding revisited by ALJ Rosa. *See* AR 1155 ("The relevant period at issue is June 14, 2010 the claimant's application date through February 25, 2012, the date the claimant was found disabled in the prior decision.").

November 5, 2009[2] and to calculate an award of benefits, because the ALJ erred by: 1) improperly rejecting Dr. Looman's opinion; 2) finding Plaintiff had no current severe physical impairments at Step Two of the sequential evaluation; and 3) improperly discounting Plaintiff's subjective symptom testimony. Dkt. 14, p.2.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

**DISCUSSION**

I.  Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

**A. Standard**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

---

[2] Regardless of the disability onset date, an award of SSI benefits cannot be paid before the application date. Social Security Ruling ("SSR") 83-20, *available at* 1983 WL 31249. In this case, Plaintiff would not be eligible for benefits prior to June 14, 2010, the protective filing date of Plaintiff's application. AR 1155.

set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

### B. Application of Standard

Dr. Mary D. Looman, Ph.D. conducted a parental competency evaluation of Plaintiff on November 5, 2009. AR 719. During the evaluation, Plaintiff presented with odd and hostile behavior, and was sarcastic, belligerent, and angry. AR 722. Dr. Looman opined this was Plaintiff's normal way of functioning, rather than situational behavior. AR 722. On mental status examination, Dr. Looman documented: disheveled appearance; inattentive behavior; scattered concentration; odd eye contact; a hostile, belligerent, and guarded attitude; blunted affect; and depressed mood. AR 720-21. Dr. Looman also documented slow speech flow and persecutory and personalized speech content, poor judgment, simplistic decision-making skills, and social immaturity. AR 721. Dr. Looman administered several objective tests, which, in Dr. Looman's opinion, suggested Plaintiff presented with symptoms of a severe and persistent personality disorder. AR 721-22. Dr. Looman diagnosed Plaintiff with: delusional disorder, persecutory;

posttraumatic stress disorder; major depressive disorder, recurrent, mild; and schizoid personality disorder with dependent traits.

As a result of these impairments, Dr. Looman opined Plaintiff would exhibit a number of deficiencies in her cognitive and psychological functioning. For example, Dr. Looman opined Plaintiff's odd and hostile behavior, as well as her sarcastic, belligerent, and angry presentation, appeared to be her normal way of functioning, rather than situational behaviors. AR 722. Further, Dr. Looman opined Plaintiff did not seem willing or able to be accountable and responsible for her behavior, did not present with the ability to control her responses to the environment, and was unable to live independently or maintain an appropriate parent-child bond. AR 722-23.

The ALJ gave Dr. Looman's opinion little weight for the following nine reasons:

> **[1]** As noted above, the evaluation occurred months prior to her application. Moreover, it occurred in the context of a parenting assessment. This is important for multiple reasons. **[2]** First, Dr. Looman did not offer a functional assessment of the claimant, **[3]** did not assess her mental status, and **[4]** did not appear to consider that the claimant was working at the time of the evaluation because she was focused on the claimant's ability to parent, not her ability to work. Using Dr. Looman's observations to determine her ability to work is taking them out of context, which undermines the weight of such opinions and observations. **[5]** Secondly, Dr. Looman notes that the claimant is angry and hostile, and she goes on to note that much of this is directed at the agency that removed her children. It is understandable that the claimant would be hostile and angry in a workplace particularly in a workplace with the limitations in the residual functional capacity. In Dr. Rowe's examination the claimant was happy when discussing her upcoming marriage, but angry when discussing the loss of her children ([AR 891]). This suggests that her anger is around her issues with her children being removed rather than an inherit [sic] angry nature.
>
> Dr. Looman's opinion is given little weight for additional reasons. **[6]** Although Dr. Looman found that the claimant was odd, hostile, belligerent, sarcastic, and angry, and felt this to be her normal way of functioning, this is not consistent with the record. The claimant was able to participate in two hearings and maintain her behavior. In other examinations, the claimant has been noted as cooperative, but acknowledged she was depressed over having her daughter removed from her custody and not being able to find a job ([AR 860]). The claimant was noted maintaining good eye contact and appropriate range of affect including anger when discussing the loss of her children and happiness when discussing her

1
2
3
4
5
6
7

    impending marriage [AR 891]. In emergency room records, she is described as cooperative at one time and reasonable at another ([AR 418-562]). Her mood and affect have been appropriate with no mention of anger, belligerence, or odd behavior ([AR 724-800]). The claimant was demonstrating normal behavior appropriate for her age and situation following her stroke ([AR 820-854]). The claimant was described as inappropriate at times, but generally pleasant ([AR 979-1041 27F]). It does not appear that the personality traits opined by Dr. Looman are the claimant's normal functioning. Dr. Looman's examination occurred in November of 2009. **[7]** The claimant tested positive for methamphetamine in March of 2010 ([AR 779). It does not appear that Dr. Looman considered the effects of any substance or inquired whether or not the claimant was abusing substances. This also undermines her opinion and the findings of her examination.

8
9
10
11
12

    **[8]** Dr. Looman also opines that the claimant has no insight into her own personality deficits, but does not indicate how this differs from the norm and does not indicate that it would cause any limitations in the claimant's ability to work, even though it is taken into consideration when determining the ability to parent a child. Dr. Looman goes on to state that the claimant does not "seem" willing to be accountable or responsible for her own behavior, but notes that the claimant does work, so there is no indication that these factors are a barrier to employment. **[9]** Additionally, this opinion is broad and vague and with no indicates [sic] that this results in limitations in work functions.

13 AR 1165-66.

14     As a threshold matter, Plaintiff argues the ALJ violated the law of the case by finding Dr.

15 Looman's opinion lacked "a functional assessment of the claimant." Dkt. 14, pp. 6-8; AR 1165.

16 The law of the case doctrine applies in the Social Security context. *Stacy v. Colvin*, 825 F.3d 563,

17 567 (9th Cir. 2016). Under the law of the case doctrine, a court is precluded from revisiting

18 issues which have been decided—either explicitly or implicitly—in a previous decision of the

19 same court or a higher court. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012).

20 This Court has previously concluded Dr. Looman's opinion "identified specific limitations in

21 plaintiff's social functioning that the ALJ was required to consider." AR 1249. ALJ Rosa's

22 finding that Dr. Looman's opinion lacked a functional assessment of the claimant is materially

23 inconsistent with the Court's finding. The Court's conclusion Dr. Looman opined to specific

24

functional limitations is binding on the ALJ, and the ALJ was not entitled to disregard this Court's finding. *See Hall*, 697 F.3d at 1067. Thus, the ALJ erred.

However, the law of the case doctrine only goes so far. Nothing in this Court's prior order required the ALJ to *adopt* Dr. Looman's opined limitations, only that the ALJ must *consider* Dr. Looman's opinion in a manner consistent with case law and Social Security Administration regulations.[3] *See* AR 1250 (recommendation that case be remanded for "further *consideration* of Dr. Looman's medical opinion.") (emphasis added). Importantly, the ALJ's improper reason for discounting Dr. Looman's opinion in the first decision—that the opinion lacked a functional assessment of the Plaintiff—was the only reason the ALJ offered at that time. *See* AR 23. Here, however, the ALJ offered eight additional reasons for discounting Dr. Looman's opinion, which this Court has not previously considered. Thus, the Court must evaluate these remaining reasons to determine if they are specific and legitimate reasons, supported by substantial evidence, for giving Dr. Looman's opinion little weight.

Upon review, the eight additional reasons the ALJ listed for giving Dr. Looman's opinion little weight are not specific and legitimate reasons supported by substantial evidence. The ALJ *first* discounts Dr. Looman's opinion because it was rendered approximately eight months prior to Plaintiff's application date of June 14, 2010. AR 1165. However, the ALJ fails to explain why this fact, without more, has any significance. While the Ninth Circuit has held "[m]edical opinions that predate the alleged onset of disability are of limited relevance," Plaintiff has alleged a disability onset date of March 1, 2007, over two and a half years prior to Dr. Looman's examination and opinion. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164-65 (9th

---

[3] Notably, the Court previously described the ALJ's prior error as a failure to "offer[] insufficient reasons to reject the medical opinion of examining psychologist [Dr.] Looman . . . ," not as a failure to *adopt* Dr. Looman's opinion as the ALJ's own. AR 1245.

ORDER ON PLAINTIFF'S COMPLAINT - 7

1 | Cir. 2008). AR 1155.[4] Significantly, the *Carmickle* court identified the claimant's alleged onset

2 | date as the relevant date, rather than the application date, for purposes of assessing the relevance

3 | of a medical opinion. *Carmickle*, 533, F.3d at 1164-65. Further, the ALJ does not cite to more

4 | recent medical opinions in the record as a basis to discount Dr. Looman's opinion, but instead

5 | relies entirely on the fact Dr. Looman's opinion was rendered before Plaintiff's application was

6 | filed.[5] *See Brown v. Commr of Soc. Sec.*, 532 Fed.Appx. 688, 689 (9th Cir. 2013) (finding ALJ

7 | did not err by rejecting opinions from prior benefits applications in favor of "more recent"

8 | opinions). On the record before the Court, this reason was not a specific and legitimate reason to

9 | discount Dr. Looman's opinion.

10 | The ALJ's *third*, *fourth*, *fifth*, and *seventh* reasons for discounting Dr. Looman's opinion

11 | are either factually inaccurate or silently disregard contrary evidence in the record. For example,

12 | despite the ALJ's finding to the contrary, Dr. Looman did assess Plaintiff's mental status as

---

[4] SSR 83-20, *available at* 1983 WL 31249, does note the established onset of disability date for SSI applications is typically set as the application date. However, a review of SSR 83-20 and related Social Security Administration guidance documents reflect this is a policy of administrative convenience and efficiency, due to the fact SSI benefits cannot be paid prior to the application date. *Id. See also* Program Operation Manual System ("POMS") § DI 25501.370, The Established Onset Date for Title XVI Claims ("In most cases, it is not necessary to develop evidence before the filing date, unless this evidence is *necessary to evaluate impairment severity or duration*.") (emphasis added). In fact, those same documents identify several scenarios where the administration *must* determine the proper onset date regardless of the SSI application date. SSR 83-20, *available at* 1983 WL 31249, at *8; POMS § DI 25501.370. In fact, POMS § DI 25501.370 suggests the administration may voluntarily choose to determine the actual disability onset date, rather than the SSI application date, in order to "save resources in the future."

[5] In fact, the ALJ relies heavily on records from 2006—predating *both* the application date and Plaintiff's alleged onset date—as a basis to discount Dr. Looman's opinion. *See* AR 1165-66 (*citing, e.g.,* AR 418-562). If Dr. Looman's opinion deserved less weight because it was rendered before the artificial cutoff of Plaintiff's application date, certainly the records which predate Plaintiff's self-described onset of disabling symptoms would have even less weight. Logic dictates the ALJ cannot discount a medical opinion, in part, due to its age, while also discounting the same opinion due to inconsistencies with even older medical records. This is especially true when the older medical records predate the allegations of disabling symptoms.

described in the "mental status and behavioral observations" section of Dr. Looman's report. AR 720-21 (noting Plaintiff was oriented to time, place, person, and situation, and demonstrated: hostile, belligerent, and guarded attitude; blunted affect; depressed mood; persecutory and personalized speech; poor judgment; and social immaturity). Also, the ALJ's finding Plaintiff "did not appear to consider that the claimant was working at the time of the evaluation" (AR 1165) is factually inaccurate. Dr. Looman noted Plaintiff was working for a temp agency at the time of her evaluation, and indicated "[a]lthough [Plaintiff] works, she does not seem willing or able to be accountable and responsible for her behavior and made threatening remarks about others several times in the session." AR 722. *See also* AR 720. Further, the ALJ's conclusion Plaintiff was only angry or hostile in the context of discussing the loss of her children is inconsistent with the record as a whole; numerous records document Plaintiff's angry, hostile, or otherwise abnormal behavior in other contexts. *See, e.g.*, AR 286, 390-91, 593, 860, 992. The ALJ also cites to a positive amphetamine screen dated four months after Dr. Looman's evaluation to conclude Dr. Looman failed to ask Plaintiff whether she was using drugs at the time of the evaluation. AR 1165. However, this conclusion is squarely contradicted by Dr. Looman's report, where Plaintiff admitted to using alcohol and cigarettes, but denied using illegal drugs. AR 720. In any event, neither party cites, nor can the Court find, any other reference to illicit drug use during the period at issue, let alone any references to drug use contemporaneous to Dr. Looman's evaluation. The ALJ's conclusion that Dr. Looman failed to account for Plaintiff's possible drug use, based on a positive amphetamine screening post-dating Dr. Looman's evaluation, is mere speculation unsupported by substantial evidence. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999); SSR 86-8, *available at* 1986 WL 68636, at *8.

1          The ALJ also offers several other reasons for discounting Dr. Looman's opinion

2  predicated on Plaintiff's work history. The ALJ's *eighth* reason for discounting Dr. Looman's

3  opinion is that Plaintiff was working at the time of Dr. Looman's evaluation, despite the fact

4  Plaintiff had no insight into her personality deficits and did not seem willing to be accountable or

5  responsible for her own behavior. AR 1166.  As her *ninth* reason, the ALJ also states this aspect

6  of Dr. Looman's opinion should be given little weight because it is "broad and vague and with

7  no indicates [sic] that this results in limitations in work functions." AR 1165. However,

8  Plaintiff's work history during this time is *de minimis*, as she only worked in the fourth quarter of

9  2009 and earned a total of $311.00 dollars, far below the presumed amounts for substantial

10 gainful activity. AR 199. *Gatliff v. Comm'r, Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999).

11 *Cf. Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact

12 that a claimant tried to work for a short period of time, and, because of his impairments, *failed*,

13 that he did not then experience pain and limitations severe enough to preclude him from

14 maintaining substantial gainful employment."). Further, as discussed above, this Court

15 previously found Dr. Looman's opinions as to Plaintiff's willingness to account for her own

16 behavior constituted specific limitations in Plaintiff's social functioning. Thus, the ALJ's *eighth*

17 and *ninth* reasons are not valid reasons to reject Dr. Looman's opinion. AR 1248-49.

18         Defendant, citing *Valentine v. Comm'r*, *Soc. Sec. Admin*, argues the ALJ properly

19 discounted Dr. Looman's opinion based on the fact Plaintiff was working at the time of the

20 evaluation. Dkt. 18, p. 3. *Valentine*, 574 F.3d 685, 692-93 (9th Cir. 2009). However, *Valentine* is

21 distinguishable. The *Valentine* court found the ALJ offered a specific and legitimate reason for

22 discounting a treating psychologist when he identified a *contradiction* between the doctor's

23 observations (acknowledging the claimant was continuing to work full-time), and the doctor's

24

opinions (opining the claimant was unemployable). *Valentine*, 574 F.3d at 692-93. Unlike in *Valentine*, the ALJ did not identify any inconsistency or contradiction between Dr. Looman's conclusion Plaintiff's odd and hostile behavior was her normal way of functioning, and her finding Plaintiff was working at the time of the evaluation. AR 720.

Finally, the consistency of a medical opinion with the whole record is an important factor in weighing a medical opinion's credibility. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). However, the ALJ's *sixth* reason for discounting Dr. Looman's opinion—it was inconsistent with the record—is unsupported by substantial evidence. The ALJ concluded Plaintiff was only odd, hostile, belligerent, sarcastic, and angry in the context of discussing her children being taken away from her. AR 1165. But, as discussed above, the ALJ's citations for this proposition are selective, and ignore many instances where Plaintiff demonstrated these behaviors in other contexts. AR 286, 390-91, 593, 860, 992. An ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). *See Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998).

The ALJ cites generally to several hundred pages of emergency room records the ALJ concluded were inconsistent with Dr. Looman's opinion. For example, the ALJ cites to 145 pages of emergency room records for the proposition that, in one instance, Plaintiff was described as cooperative, and in another instance, she was described as reasonable. AR 512, 514. However, these specific records predate Plaintiff's self-described disability onset date by over one year, and occurred in the context of an emergency room visit for her hip pain. AR 511-14. The examining physician did not perform any mental status examination (other than to document

a lack of suicidal or homicidal ideation) and the remaining 143 pages of records do not discuss Plaintiff's mood, affect, or behavior whatsoever. AR 512; 418-562.

The ALJ also cites to 76 pages of medical records which contain occasional references to Plaintiff's mood and affect being "appropriate" on examination, with no mention of anger, belligerence, or odd behavior. AR 724-800. As with the other emergency room records cited by the ALJ, however, these evaluations occurred in the context of emergency room evaluations for Plaintiff's migraine headaches and reports of chest pain. *See, e.g.*, 734, 739. These records only reflect Plaintiff's affect and mood were "appropriate," and do not include any other mental status examination findings. Less extensive findings rendered by other providers who were not tasked with assessing Plaintiff's mental health do not warrant discounting Dr. Looman's opinion in this case. *See Ryan v. Commissioner of Social Sec. Admin*, 528 F.3d 1194, 1200 9th Cir. 2008) ("Nothing in [one examining doctor's report] rules out [another examining doctor's] more extensive findings") (*quoting Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999)). *Cf. Orn v. Astrue,* 495 F.3d 625, 634 (9th Cir. 2007) ("Consistency does not require similarity in findings over time despite a claimant's evolving medical status."). The Court also notes, in the context of emergency room visits for head and chest pain, what might constitute "appropriate" mood and affect for the situation are not necessarily "normal," nor necessarily inconsistent with Dr. Looman's opinion that Plaintiff's normal way of functioning is belligerent, sarcastic, or angry. On the record before the Court, this is not evidence "a reasonable mind might accept as adequate to support a conclusion" that Dr. Looman's opinion is inconsistent with these medical records. *Magallanes*, 881 F.2d at 750.

Lastly, the ALJ cites generally to 63 pages of medical records for the proposition Plaintiff's behavior was "inappropriate at times but generally pleasant." AR 980-1041. However,

those records also indicate Plaintiff was easily sidetracked on examination, directed frequent angry statements towards her significant other, and possessed poor coping skills. AR 992. *See Garrison v. Colvin*, 759 F.3d 995, 1017, n.23 (9th Cir. 2014) (finding the ALJ erred by selectively citing isolated quotes from a doctor's treatment notes to support a finding of non-disability). As the ALJ failed to support this reasoning with substantial evidence, the ALJ erred.

Because the ALJ failed to offer specific and legitimate reasons, supported by substantial evidence, for giving Dr. Looman's opinion little weight, the ALJ erred. Further, vocational expert testimony in the record reflects an individual with the limitations opined to by Dr. Looman would not be able to sustain competitive employment. AR 73-74. Thus, the ALJ's error was not inconsequential to the ultimate nondisability determination, and requires remand. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

II.   Other Assignments of Error

In addition to the foregoing, Plaintiff contends the ALJ erred by failing to find several of Plaintiff's impairments to be severe impairments at Step Two of the sequential evaluation, and by improperly discounting Plaintiff's subjective symptom testimony. As the case must be remanded in any event, the Court need not address these allegations in great detail. Nonetheless, Plaintiff's assignments of error warrant brief discussion here with the intent of avoiding any unnecessary delay in the ultimate disposition of this matter.

**A.  Whether the ALJ Erred at Step Two of the Sequential Evaluation**

At Step Two of the sequential evaluation, the ALJ must determine if a claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2015). *See also Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (internal citation omitted). Impairments must result "from anatomical, physiological, or

psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908 (2010). A medically determinable impairment is considered "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(a)(4)(iii) & (c), 416.920(a)(4)(iii) & (c); *see also* SSR 96-3p, *available at* 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

The Step Two inquiry, however, is merely a threshold determination as to whether a claimant has raised a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). *See also Smolen*, 80 F.3d at 1290 (noting the Step Two determination is a *de minimis* screening device used to dispose of groundless claims). "Ample authority cautions against a determination of nondisability at step two." *Ortiz v. Commissioner of Social Sec.*, 425 Fed.Appx. 653, 655 (9th Cir. 2011) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005), *Smolen*, 80 F.3d at 1290. An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290.

Here, Plaintiff argues the ALJ failed to consider Plaintiff's obesity, hypertension, and personality disorders to be severe impairments. Dkt. 14, pp. 13-14. However, Plaintiff does not cite to any evidence in the record—other than the mere fact Plaintiff's body mass index score

was 38.9 during the relevant period—to support a conclusion Plaintiff's obesity in any way limits her functioning. *See Burch v. Barnhart*, 400 F.3d 676, 683-84 (9th Cir. 2005) (noting the court need not decide whether the ALJ's failure to consider the claimant's obesity was error, as the record before the court did not present any evidence as to "whether and how claimant's obesity might have exacerbated her condition."). Further, despite the substantial impact Plaintiff's hypertension and secondary chronic headaches appear to have had on her ability to perform basic work activities (*See, e.g.*, 285, 312), the ALJ properly noted Plaintiff's hypertension was well-controlled with her prescribed medication, and thus could not support a finding of disability. AR 1158. *See Warre v. Comm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Finally, Plaintiff fails to articulate any argument as to why Plaintiff's personality disorder diagnoses were not considered to be severe impairments. Thus, the ALJ did not err at Step Two of the sequential evaluation.

### B. Whether the ALJ Improperly Discounted Plaintiff's Subjective Symptom Testimony

If an ALJ finds a claimant has a medically determinable impairment which reasonably could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons." *Smolen*, 80 F.3d at 1284 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample*, 694 F.2d at 642 (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989). *See also*

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Here, the ALJ properly noted Plaintiff had previously stated she was not working during the relevant period due to a lack of available work, rather than as a consequence of her severe impairments. AR 48, 891.  The ALJ also noted Plaintiff was inconsistent in her reporting of substance use. Specifically, she denied a history of substance abuse at her first hearing and denied methamphetamine use during a May, 2011 psychological examination; however, the claimant had tested positive for amphetamines, and was diagnosed with methamphetamine intoxication in March, 2010. AR 774.[6] These were clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010); *Bray v. Comm'r, Soc. Sec Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

However, several of the ALJ's other reasons for discounting Plaintiff's subjective symptom testimony were not clear and convincing reasons, supported by substantial evidence. For example, the ALJ failed to account for Plaintiff's documented deficiencies in insight and

---

[6] Notably, all of these events occurred after Dr. Looman's evaluation. *See* Section I(B), *supra*.

judgment when she noted Plaintiff failed to seek mental health treatment during the period at issue. *See* AR 722. *See Molina*, 674 F.3d at 1114 (*citing Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Nguyen*, 100 F.3d at 1465. Further, an evaluation of a claimant's credibility relies, in part, on an accurate assessment of the medical evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). As discussed in Section I, above, the ALJ erred in evaluating the medical opinion evidence, requiring remand. As this case must be remanded for further proceedings in any event, the ALJ should also reevaluate Plaintiff's credibility anew on remand.

   III.   Whether the Case Should be Remanded for an Award of Benefits or Further Proceedings

Plaintiff argues the case should be reversed and remanded for the award of benefits, rather than for further proceedings.

Generally, when the Social Security Administration does not determine a claimant's application properly, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has established a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen*, 80 F.3d at 1292. This test, often referred to as the "credit-as-true" rule, allows a court to direct an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178 (*quoting Smolen*, 80 F.3d at 1292). *See also Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014), *Varney v. Sec'y of*

ORDER ON PLAINTIFF'S COMPLAINT - 17

1  *Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988). Further, even if the ALJ's errors satisfy
2  the three elements of the test articulated in *Harman* and *Smolen*, such errors are relevant only to
3  the extent they impact the underlying question of Plaintiff's disability. *Strauss v. Commissioner*
4  *of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not entitled to
5  benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the
6  ALJ's errors may be." *Id.* (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir.
7  2005)). Therefore, even if the credit-as-true conditions are satisfied, a court should nonetheless
8  remand the case if "an evaluation of the record as a whole creates serious doubt that a claimant
9  is, in fact, disabled." *Garrison*, 759 F.3d at 1021 (*citing Connett v. Barnhart*, 340 F.3d 871, 876
10 (9th Cir. 2004)).

11     Here, outstanding issues must be resolved. For example, Dr. Looman's opinion as to
12 Plaintiff's severe limitations appear to conflict with medical opinions in the record which were
13 rendered prior to February 25, 2012. *See, e.g.*, AR 888-94. *See Harman*, 211 F.3d at 1180. *See*
14 *also Treichler*, 775 F.3d at 1105-06. Thus, it is not clear from the record that the ALJ would be
15 required to find Plaintiff disabled prior to February 25, 2012, and the case should be remanded
16 for additional proceedings.

## **CONCLUSION**

18     Based on the foregoing reasons, the Court finds the ALJ erred by failing to properly
19 evaluate Dr. Looman's opinion. Therefore, the Court orders this matter be reversed and
20 remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should
21 reevaluate the medical opinion evidence, reevaluate Plaintiff's subjective symptom testimony,
22 re-evaluate Plaintiff's RFC for the period beginning June 14, 2010 through February 25, 2012,
23 and proceed on to Step Four and/or Step Five of the sequential evaluation as appropriate. The
24

1 | ALJ should also develop the record as needed. Judgment should be for Plaintiff and the case
2 | should be closed.

3       Dated this 5th day of October, 2016.

/s/ David W. Christel
David W. Christel
United States Magistrate Judge